IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| JOHN L. CORRIGAN, SR. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | No. 1:19-cv-00997 (RDA) |
| RODNEY E. HOOD, Chairman, National ) | |
| Credit Union Administration Board of ) | |
| Directors, ) | |
| ) | |
| Defendant. ) | |

## ORDER

This matter comes before the Court on Defendant Rodney E. Hood, Chairman of the National Credit Union Administration Board of Directors' ("Defendant") Motion to Dismiss for Lack of Jurisdiction (Dkt. 7) and Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 8). Considering Plaintiff John L. Corrigan Sr.'s ("Plaintiff") Complaint (Dkt. 1); Defendant's Motion to Dismiss for Lack of Jurisdiction; Defendant's Motion to Dismiss for Failure to State a Claim; the Memorandum of Law in Support of Defendant's Motion[s] to Dismiss (Dkt. 9); Plaintiff's Opposition to Defendant's Motion to Dismiss (Dkt. 28); Plaintiff's Affidavit in Support of His Opposition to Defendant's Motion to Dismiss (Dkt. 29); the Reply in Support of Defendant's Motion to Dismiss (Dkt. 35); and argument before the Court on December 6, 2019,[1] this Court DENIES Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction, GRANTS Defendant's Motion to Dismiss for Failure to State a Claim.

---

[1] Despite the Court's Order (Dkt. 37) that Plaintiff appear in person on Friday, December 6, 2019, at 10:00 a.m. for a hearing concerning Defendant's Motions to Dismiss for Lack of Jurisdiction and Failure to State a Claim, Plaintiff did not appear.

# I. BACKGROUND

## A. Factual Background

In November 1999, Plaintiff began working for the National Credit Union Administration ("NCUA") and was employed as a CU-11 Credit Union Examiner in NCUA's Region 5 until he retired in February 2016. Dkt. 1, ¶¶ 7, 9. Between the years of 2000 and 2016, Plaintiff filed several grievances with the NCUA concerning job promotion, travel time, airport shuttle fees, *per diem* expenses, annual leave, supervisor issues, travel vouchers, and "official duty station – among[st] other things." Dkt. 1, ¶ 12.

From 2000 – 2004, the NCUA promoted examiners from the CU-11 level to the CU-12 level based their completion of (1) qualifying CU-12 work, (2) a qualifying performance appraisal, (3) a 30-day regional office "detail," and (4) the approval of a supervisory panel. Dkt. Nos. 1, ¶ 10; 9, 3. In June of 2004, NCUA employees voted to be represented by the National Treasurer Employees Union. Dkt. 1, ¶ 13. In 2010, NCUA changed the promotion process for CU-11s who sought to be promoted to CU-12s. Dkt. Nos. 1, ¶ 11; 9, 3. In addition to the existing prerequisites, the NCUA added a three-part examination that was comprised of multiple-choice, writing, and "job simulation analysis" sections, where candidates were required to achieve at least a "meets expectations" in every element. Dkt. Nos. 1, ¶ 11; 1-4, 5; 9, 3.

"In 2009 or 2010[,] NCUA sought CU-11 examiners who would like to become temporary CU-12 examiners." Dkt. 1, ¶ 12. Fifty-eight "qualified examiners" applied for the positions. Dkt. 1, ¶ 17. There were 28 examiners under the age of 40-years-old who applied for and were hired for the positions. Dkt. 1, ¶ 17. Thirty examiners over the age of 40-years-old applied for the positions and 31 of those applicants were selected. Dkt. 1, ¶ 17.

In 2011, NCUA sought "Temporary Credit Union Principal Examiners," but they did not look for people to fill those positions in Plaintiff's assigned region. Dkt. 1, ¶¶ 19, 39.

Six CU-11 examiners in Plaintiff's "group" sought promotion to a CU-12 position. Dkt. 1, ¶ 18. One person who was under the age of 40-years-old passed all the components of the examination. Dkt. 1, ¶ 18. Another person under the age of 40 passed the multiple-choice portion, failed the job simulation portion, and failed the written portion twice before receiving a promotion. Dkt. 1, ¶ 18. One person over the age of 40 passed all components of the exam after taking the written portion of the test three times. Dkt. 1, ¶ 18. Two people over the age of 40 failed the written section of the examination three times. Dkt. 1, ¶ 18. Plaintiff, who was over the age of 40 years, passed the written portion of the exam; passed the multiple-choice section after his second attempt; and failed the job simulation portion twice, but passed on his third try after receiving training. Dkt. 1, ¶ 18. However, Plaintiff was denied the promotion because he did not receive satisfactory reviews on the appraisal portion of the promotion process. Dkt. 1, ¶ 18.

On November 25, 2013, Plaintiff was notified that he did not receive at least a "meets expectation" on all the critical elements of his performance appraisal portion of the promotion process, and therefore he would not be considered for promotion to CU-12. Dkt. Nos. 1, ¶ 11; 1-4, 5; 9, 3.

### B. Procedural Background

On October 29, 2014, Plaintiff initiated contact with an EEO Counselor. Dkt. 1-4, 2. In March 25, 2015, Plaintiff filed a complaint with the EEO, in which he alleged that the NCUA "discriminated against him on the bases of age (born 1947) and [retaliated against Plaintiff] for prior protected activity (grievances) when, beginning in January 2010, the [NCUA] implemented a new promotion process that had a disparate impact on his ability to be promoted to the CU-12

3

level." Dkt. 1-4, 2. On March 17, 2017, the EEOC's Administrative Judge dismissed Plaintiff's EEO complaint "for untimely EEO Counselor contact after finding that [Plaintiff] had not provided a basis for waiving or estopping the 45-day time limit in 29 C.F.R. § 1614.105(a)(1)." Dkt. 1-4, 2.

Plaintiff then appealed the Administrative Judge's decision to the EEO's Office of Federal Operations. Dkt. 1-4. The Office of Federal Operations affirmed the Administrative Judge's findings for the same reason, noting it "it was well more than 45 days after [Plaintiff's] most recent performance appraisal making him ineligible for promotion." Dkt. 1-4, 5.

On August 1, 2019, Plaintiff then filed a Complaint against Defendant in this Court setting forth the following allegations: (1) discrimination under a theory of disparate treatment "in violation of the Age Discrimination in Employment Act (["]ADEA["]), 29, U.S.C. § 621"; (2) discrimination under a theory of disparate impact in violation of the ADEA, "29 U.S.C. § 621"; (3) retaliation and discrimination in violation of ADEA, "29 U.S.C. § 621 and 5 U.S.C. § 2302 – Prohibited Personnel Practices"; and (4) a second count of retaliation and discrimination in violation of ADEA, "29 U.S.C. § 621 and 5 U.S.C. § 2302 – Prohibited Personnel Practices." Dkt. 1, ¶¶ 22-40. With respect to Counts Three and Four, which allege claims of retaliation, Plaintiff maintains that NCUA "took repressive actions relating to: salaries, promotions[,] and other employment issues in retaliation for [union] representation of covered NCUA employees." Dkt. 1, ¶ 15.

On October 15, 2019, Defendant brought the Motions presently before the Court. Dkt. Nos. 7-9. On November 21, 2019, Plaintiff opposed Defendant's Motions. Dkt. Nos. 28 - 29. Defendant then replied to Plaintiff's Opposition. Dkt. 35. This matter has been fully briefed and argued and is now ripe for disposition.

## II. STANDARD OF REVIEW

### A. Federal Rule of Civil Procedure 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) allows a defendant to move for dismissal when the court lacks jurisdiction over the subject matter of the action. Fed. R. Civ. P. 12(b)(1). A district court must dismiss an action over which it lacks subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1), (h)(3). In considering a 12(b)(1) motion to dismiss, the burden is on the plaintiff to prove that the federal subject matter jurisdiction is proper. *See United States v. Hays*, 515 U.S. 737, 743 (1995) (citing *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936)); *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982). There are two ways in which a defendant may present at 12(b)(1) motion. First, a defendant may attack the complaint on its face when the complaint "fails to allege facts upon which subject matter jurisdiction may be based." *Adams*, 697 F.2d at 1219. In such a case, all facts as alleged by the plaintiff are assumed to be true. *Id.*

Alternatively, a 12(b)(1) motion to dismiss may attack the existence of subject matter jurisdiction over the case apart from the pleadings. *See Williams v. United States*, 50 F.3d 299, 304 (4th Cir. 1995) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *White v. CMA Contr. Co.*, 947 F. Supp. 231, 233 (E.D. Va. 1996). In such a case, the trial court's "very power to hear the case" is at issue. *Mortensen*, 549 F.2d at 891. The district court is then free to weight the evidence to determine the existence of jurisdiction. *Adams*, 697 F.2d at 1219. "No presumptive truthfulness attaches to the plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Mortensen*, 549 F.2d at 891.

Based upon Defendant's recitation of the standard of review, it appears that Defendant is attacking subject matter jurisdiction under the second method. Dkt. 9, 5. The Court will assess Defendant's Motion to Dismiss for lack of jurisdiction accordingly.

## B. Federal Rule of Civil Procedure 12(b)(6)

A Federal Rule of Civil Procedure 12(b)(6) motion should be granted unless an adequately stated claim is "supported by showing any set of facts consistent with the allegations in the complaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561 (2007) (internal citations omitted); *see* Fed. R. Civ. P. 12(b)(6). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Twombly*, 550 U.S. at 555. A complaint is also insufficient if it relies upon "naked assertions devoid of further factual enhancement." *Id.*

To survive a Rule 12(b)(6) motion to dismiss, a complaint must set forth "a claim for relief that is plausible on its face." *Id.*; *Twombly*, 550 U.S. at 570. A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556. In considering a Rule 12(b)(6) motion, the Court must construe the complaint in the light most favorable to the plaintiff, read the complaint as a whole, and take the facts asserted therein as true. *E. Shore Mkts., Inc. v J.D. Assoc. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000); *Mylan Lab., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). In addition to the complaint, the court may also examine "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 127 S. Ct. 2499, 2509 (2007). "Conclusory allegations regarding the legal effect of the facts alleged" need not be accepted. *Labram v. Havel*, 43 F.3d 918, 921 (4th Cir. 1995); *see also E. Shore Mkts., Inc.*, 213 F.3d at 180 ("[w]hile we must take the facts in the light most favorable to the plaintiff, we need not accept the legal conclusions drawn from the facts . . . . [s]imilarly, we need not accept as true unwarranted inferences, unreasonable conclusions, or arguments.").

While an employment discrimination plaintiff need not establish a *prima facie* case at the pleading stage, he must still allege "facts sufficient to state all the elements of [his] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). That a *pro se* complaint should be liberally construed neither excuses a *pro se* plaintiff of his obligation to "clear the modest hurdle of stating a plausible claim" nor transforms the court into his advocate. *Green v. Sessions*, No. 1:17–cv–01365, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018).

### III. ANALYSIS

As a preliminary matter, Plaintiff, a *pro se* litigant, cites to the inapplicable statute in support of each of the four counts pleaded in his Complaint. Each of Plaintiff's claims, at least in part, allege some form of age discrimination in violation of 29 U.S.C. § 621. Dkt. 1, ¶¶ 22-40. Defendant, citing *Leham v. Nakshian*, counters that the proper statute Defendant should have cited is 29 U.S.C. § 633a because Defendant, during the time he avers he was aggrieved, was employed by the federal government. 453 U.S. 156, 166 (1981); Dkt. 9, 7.

Indeed, "Congress expanded the scope of ADEA in 1974 to include . . . Federal Government employers." *Lehman*, 453 U.S. at 166. Accordingly, 29 U.S.C. §§ 633a(a) and (f) provides that

> [a]ll personnel actions affecting employees . . . who are at least 40 years of age . . . in [an Executive department, a Government corporation, and an independent establishment][2] . . . shall not be subject to, or affected by any provision of this chapter . . .

with one exception that is not relevant for purposes of this Motion. 29 U.S.C. §§ 633a(a) and (f). Defendant attests that "at all relevant times he was over 40-years-old," and "was employed with

---

[2] *See* 5 U.S.C. § 105. (incorporated by reference into 29 U.S.C. § 633a(a) and defines the term "Executive agency.").

7

NCUA as a Credit Union Examiner." Dkt. 1, ¶ 7. As such, 29 U.S.C. § 633a is the proper statute under which Plaintiff should have alleged violations. Notwithstanding this error, this Court will first address whether this Court lacks subject matter jurisdiction over Plaintiff's claims.

### A. Subject Matter Jurisdiction

The Court finds that it has subject matter jurisdiction over Plaintiff's claims. Defendant sets forth two reasons why he believes this Court lacks subject matter jurisdiction over Plaintiff's claims. First, Defendant urges that the federal government has not waived sovereign immunity with respect to disparate impact claims. Dkt. 9, 2, 6-9. Defendant cites to the language of 29 U.S.C. § 633a(a) and articulates that "[t]he 'free from any discrimination based on age' language is most naturally construed to prohibit intentional age discrimination (disparate treatment claims), not facially neutral practices that are alleged to have an adverse effect on employees over 40 (disparate impact claims)." Dkt. 9, 7. The Court notes that neither the Fourth Circuit Court of Appeals, nor this Court have adopted this view with respect to the interpretation of 29 U.S.C. § 633a(a). The Court declines to do so in the instant matter. The plain language of § 633a(a) does not distinguish between disparate treatment and disparate impact claims. *See Robinson v. GDC, Inc.*, 193 F. Supp. 3d 577, 583 (E.D. Va. 2016) ("there can be no doubt that the plain language . . . provides the best evidence of legislative intent.") (internal citations omitted).

The Court is equally unpersuaded by Defendant's second argument that the Court lacks subject matter jurisdiction over all of Plaintiff's claims because Plaintiff has failed to timely exhaust administrative remedies. It appears that this argument may be better suited as a motion to dismiss for failure to state a plausible claim of relief. *See Harris v. Brennan*, 3:18-cv-334, 2019 WL 1233848 at *1-2 (E.D. Va. March 15, 2019) (finding Defendant's challenge that Plaintiff did not "initiate contact with a counselor within 45 days of the alleged discriminatory act," pursuant

8

to 29 C.F.R. § 1614.105(a)(1) was a "defense under Rule 12(b)(6) for failure to state a claim rather than Rule 12(b)(1) for lack of subject matter jurisdiction") (citing *Zografov v. V.A. Medical Center*, 779 F.2d 967, 969 (4th Cir. 1985)).

Therefore, this Court finds that it does, in fact, have subject matter jurisdiction, and Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is denied.

### B. Failure to State a Claim

*1. Count One*

Turning to the question of whether Plaintiff fails to state a plausible claim for relief, the Court finds that Plaintiff's claim of "Disparate Treatment" fails. Dkt. 1, 6. Defendant contends that Plaintiff has failed to state a plausible claim for relief with respect to this claim because Plaintiff has not alleged any facts that Defendant, nor "anyone at NCUA[,] exhibited discriminatory animus toward Plaintiff on the basis of [Plaintiff's] age." Dkt. 9, 12. The Court agrees.

There is a stark distinction between a disparate impact and a disparate treatment claim. Employees suffer disparate treatment where an "employer simply treats [them] less favorably than other [ ] [employees] *because of* their . . . protected characteristics." *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 609 (1993) (emphasis added) (internal citations omitted). The cornerstone of a disparate treatment claim is a discriminatory motive. *Id.* By contrast, an employee is said to be "disparate[ly] impact[ed]" where "employment practices that are facially neutral in their treatment of different groups but that in fact fall more harshly on one group than another cannot be justified by business necessity." *Id.* There is no requirement of a discriminatory motive in such cases. *Id.* Thus, Plaintiff, by pleading that he was treated disparately, is essentially alleging that when NCUA implemented the three-part examination as a prerequisite for promotion, Defendant, acting in his

9

official capacity, was motivated to discriminate against Plaintiff because of his age. *See* Dkt. 1, ¶¶ 22-24.

Construing Plaintiff's Complaint liberally, the Complaint is devoid of any fact that would tend to show that Defendant or any one at NCUA acted with a motive to discriminate against Defendant because of his age. *See Green*, 2018 WL 2025299, at *8 (E.D. Va. May 1, 2018), *aff'd*, 744 F. App'x 802 (4th Cir. 2018). Therefore, the Court grants Plaintiff's Motion to Dismiss for Failure to State a Claim with respect to Count One of Plaintiff's Complaint.

### 2. *Count Two*

Count Two of Plaintiff's Complaint alleges a claim of "Disparate Impact." Dkt. 1, ¶¶ 27-32. Plaintiff avers that "in or around 2010" Defendant implemented a three-part examination for promotion to the CU-12 level. Plaintiff maintains that "[t]he pass/fail rate of the over/under 40 age group will fully detail the negative impact of the three-pronged test to the over 40 age group." Dkt. 1, ¶¶ 11, 24, 27, 32. The Court surmises[3] that here Plaintiff is referring to the statistics set forth in paragraphs 17, 18, and 21 of his Complaint. Dkt. 1, ¶¶ 17-18. Paragraph 17 provides that:

> In 2009 or 2010 NCUA sought CU-11 examiners who would like to become temporary CU-12 examiners. Fifty-eight *qualified examiners* applied for the limitless allocations. Twenty-eight CU -11 examiners under the age of 40 applied and received temporary promotions. Thirty CU-11 examiners over the age of 40 applied – but 9 were not selected.

Dkt. 1, ¶ 17 (emphasis in original). Paragraph 18 further sets forth that:

> In 2010 NCUA unveiled a new promotion plan which included the promotion package, as well as, a written examination of three parts a) writing; b) multiple choice . . . ; and c) a job simulation analysis . . . . In [Plaintiff's] group . . . six CU-11 examiners were looking to be promoted to the CU-12 level. One [examiner] under 40 passed all parts; one over 40 passed after taking the written three times –

---

[3] Bearing in mind that under the 12(b)(6) standard, the Court may only consider the facts pleaded in the complaint and those incorporated by reference therein, the Court makes this assumption because these appear to be the only statistics set forth in Plaintiff's Complaint. *See* Dkt. 1

10

> passing on the third; one under 40 passed the multiple choice, failed the job simulation once, and failed the written twice before going before the panel and getting her promotion; one [Plaintiff who was over 60-years-old] passed the written [portion], passed the multiple choice on the second try, failed the job simulation twice (passed on the third try after getting special permission to join the levels training relating to that subject) but received a 1 instead of a 2 in District Management on the appraisal for two straight years [which] prevent[ed Plaintiff] from going before the promotion panel; one over 55, failed the written [portion] 3 times . . . [another person] over 40 failed the written [portion] 3 times . . . .; one over 40 failed the written [portion of the exam] 3 times . . .

Dkt. 1, ¶ 18. Paragraph 21 indicates that:

> Between 2010 and 2014 there were noticeable concerns about the three-part test given for promotion from CU-11 to CU-12. For example: in 2013 the job simulation pass rate was 74% and 50% while in 2014 the pass rate was 50% and 23%; in 2013 the written pass rate was 42% and in 2014 it was 59% but 30 minutes was added to the test. Also, somewhere in 2014, the writing part was changed to add NCUA reviewers.

Dkt. 1, ¶ 21.

"The usefulness of statistics depends on the surrounding facts and circumstances." *Carter v. Ball*, 33 F.3d 450, 456 (4th Cir. 1994) (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 340 (1977). The Fourth Circuit has found that "[i]n the case of discrimination in . . . promoting, the relevant comparison is between the percentage of [ ] employees [in a protected class] and the percentage of potential [ ] applicants in the qualified labor pool." *Carter*, 33 F.3d at 456. Further, the statistical data provided must not involve a "too small a sample size to have any probative value." *Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) (finding a group of four people too small a sample size); (citing *Palmer v. United States*, 794 F.2d 534, 539 (9th Cir. 1986) (finding sample sizes ranging from five and thirteen are "too small to have predictive value.").

Turning first to paragraph 17, Defendant maintains that Plaintiff has not pleaded sufficient facts to support his conclusion that the applicants discussed in that paragraph were "qualified."

11

Dkt. 9, 13. The Court agrees. Plaintiff summarily alleges that all fifty-eight of the applicants were, absent consideration of the three-part examination, otherwise qualified for promotion, but Plaintiff does not set forth facts supporting why. As such, the facts alleged in paragraph 17 of Plaintiff's Complaint are not sufficient to support a conclusion that the implementation of the three-part examination had a disparate impact on Plaintiff or any other CU-11 NUCA employee over the age of 40-years-old.

Further, the alleged facts set forth in paragraph 18 are quantitatively insufficient to support a claim of disparate impact. The sample size Plaintiff provided in paragraph 18 consisted of a total of six people. Of the six people, two of them were under 40 years of age, and those two people happened to pass the exam. Four people were over 40 years of age, and one of them passed, while the other three failed. While the pass rate of the sample size provided here shows 100% of the applicants under 40-years-old passed the examination, and only 25% of the applicant group over 40-years-old failed the examination, the sample size Plaintiff has pleaded in paragraph 18 is too small to derive statistical significance. *See Birkbeck*, 30 F.3d at 511 (noting where sample sizes are small, "small changes in . . . numbers will have a potentially huge effect on . . . statistical showing"). The Court finds that this applicant pool is simply too small to have probative value, and in turn, does not provide a sufficient factual basis to support a plausible claim of relief.

Moreover, the facts pleaded in paragraph 21 are equally of little probative value. The facts set forth in paragraph 21 at least provide a marginally larger applicant pool than those set forth in paragraph 18 of the Complaint, but they do not provide the Court with the ratio of 40-year-old employees that passed or failed within each given year. As such, the percentages provided in paragraph 21 provide minimal aid in determining whether Plaintiff or any other NCUA employee over the age of 40 was disparately impacted.

Because Plaintiff fails to plead sufficient facts to support a plausible claim of discrimination under a theory of disparate impact, the Court must grant Defendant's Motion to Dismiss for Failure to State a Claim with respect to Count Two of Plaintiff's Complaint.

### C. Counts Three and Four

Counts Three and Four of Plaintiff's Complaint appear to set forth claims of retaliation. Dkt. 1, ¶¶ 33-40. Defendant predicates his argument on the lack of factual support to show the "requisite 'but-for causation' for a retaliation claim." Dkt. 1, 14 n. 9. The Court agrees.

One of the elements required for a successful claim of retaliation is that there must be a "causal link between the protected activity and the adverse action." *Campbell v. Esper*, 1:17-cv-00568, 2018 WL 1794724, at *3 (E.D. Va. April 16, 2018) (finding Plaintiff no retaliatory motive under 29 U.S.C. § 633a(a) of the ADEA) (citing *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 405-06 (4th Cir. 2005)). Said otherwise, "[t]o prove causation, a plaintiff claiming retaliation must show that reprisal was the 'but for' cause of the personnel action." *Campbell*, 2018 WL 1794724, at *3 (citing *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 176-77 (2009) (applying the "but-for" standard to a claim of retaliation under the ADEA).

In the matter at bar, while the Court recognizes that Plaintiff need not make a *prima facie* showing at the instant juncture, Plaintiff, even as a *pro se* litigant, must still allege "facts sufficient to state all the elements of [his] claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003); *see also Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). However, the Court does not find that Plaintiff has done so.

Plaintiff's Complaint alleges that Defendant, acting in his official capacity as Chairman of the NCUA, retaliated against employees over 40-years-old, including Plaintiff, for deciding to vote for the NCUA's formation of a union. Dkt. 1, ¶ 15. One of the ways Plaintiff seems to aver that

Defendant retaliated against this group was by "the non-selection [sic] of nine CU-11 examiners" who were somehow otherwise qualified. Dkt. 1 ¶¶ 17, 33-36. Setting aside the reasons articulated above (*supra*, 11-12), finding that Plaintiff has not pleaded sufficient facts to support his conclusion that the nine people here were indeed qualified for the positions they sought, Plaintiff has not pleaded sufficient facts to show that "but for" voting for the NCUA union, he and this group of people would have been promoted. *Campbell*, 2018 WL 1794724, at *3.

Plaintiff also maintains that "[t]he non-solicitation of [Plaintiff] in Region 5" was retaliatory. Dkt. 1, ¶¶ 39-40. However, while Plaintiff appears to speculate that this decision was based on Plaintiff's decision to vote for a NCUA union (Dkt. 1, ¶¶ 13-15), Plaintiff certainly has not pleaded sufficient facts to support a claim that NCUA would have solicited people in Plaintiff's region but for Plaintiff voting for a NCUA union. *Campbell*, 2018 WL 1794724, at *3.

Therefore, the Court grants Defendant's Motion to Dismiss for Failure to State a Claim with respect to Counts Three and Four of Plaintiff's Complaint.

### D. Plaintiff Will Not Have Leave to Amend the Complaint

The Court will not give Plaintiff leave to amend his Complaint. As the Fourth Circuit has held, "[l]eave to amend need not be given when amendment would be futile." *In re PEC Sols., Inc. Sec. Litig.*, 418 F.3d 379, 391 (4th Cir. 2005) (citing *Forman v. Davis*, 371 U.S. 178, 182 (1962)). In the instant matter, it appears that Plaintiff did not timely exhaust administrative remedies prior to bringing his claims to this Court, and because he did not do so, he is precluded from bringing his claims to this Court. Thus, any further amendment would be futile.

While this Court, finds that this failure is not a jurisdictional question (*supra*, p. 8-9), the Court does find that Plaintiff is precluded by his failure to comply with the pre-complaint administrative procedures. *See Zografov*, 779 F.2d at 969 (finding the time limit in 29 C.F.R. §

1613.214(a)(1) is not a limit on the district court's subject matter jurisdiction, but rather is a "simple failure to exhaust administrative remedies" and therefore, the time limitation "may be subject to estoppel in appropriate circumstances"); *see also Brennan*, 2019 WL 1233848 at *1-2 (applying the *Zografov* finding to the 45-day time bar in 29 C.F.R. § 1614.105(a)(1)).

*1. Count One*

In Count One of his Complaint, Plaintiff sets forth a claim of "Disparate Treatment." Dkt. 1, ¶¶ 22-26. However, the essence of the claims Plaintiff brought before the EEO were not disparate treatment claims as they did not sound in discriminatory motivation, but rather discriminatory impact. Plaintiff's EEO complaint "referenced 'disparate treatment' only in passing," thus, Plaintiff's EEO complaint did not "substan[tively]" raise and the EEO did not consider, a claim of disparate treatment, but rather, disparate impact. Dkt. 9, 10.

The United States Court of Appeals for the Fourth Circuit has held, "'[o]nly those discrimination claims stated in the initial charge, those reasonably related to the original complaint, and those developed by reasonable investigation of the original complaint may be maintained in a subsequent . . . lawsuit'" brought in a federal court. *Chacko v. Patuxent Inst.*, 429 F.3d 505, 506 (4th Cir. 2005) (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 963 (4th Cir.1996)). In March 2015, Plaintiff filed an EEO complaint, which alleged that the NCUA "implemented a new promotion process that had a disparate *impact* on his ability to be promoted to the CU-12 level." Dkt. 1-4, 2. (emphasis added)

Disparate impact and disparate treatment claims are distinct (*supra*, pgs. 9-10). Plaintiff, by pleading before this Court that he was disparately treated, is now essentially alleging that when NCUA implemented the three-part examination as a prerequisite for promotion, Defendant, acting in his official capacity, was motivated to discriminate against Plaintiff because of his age. *See* Dkt.

1, ¶¶ 22-24. By contrast, Plaintiff pleaded to the EEO that Defendant "discriminated against him on the bases of age (born 1947) and [reprised Plaintiff] for prior protected activity (grievances) when, beginning in January 2010, the [NCUA] implemented a new promotion process that had a *disparate impact* on his ability to be promoted to the CU-12 level." Dkt. 1-4, 2. (emphasis added). Plaintiff did not bring a claim of disparate treatment to the EEO. Dkt. 1-4, 2.

Therefore, because Plaintiff did not present his claim of disparate treatment to the EEO before pleading such a claim to this Court, the Court finds that Plaintiff did not exhaust his administrative remedies, and the Court therefore finds that Plaintiff is precluded from bringing this claim of disparate treatment before this Court.

Even if it could be said that Plaintiff did bring an attenuated claim of disparate treatment to the EEO before bringing it before this Court, Plaintiff did not do so in a timely fashion as to circumvent estoppel. Pursuant to 29 C.F.R. § 1614.105(a), "[a]ggrieved persons who believe they have been discriminated against on the basis of . . . age . . . must consult a Counselor prior to filing a complaint in order to try to informally resolve the matter." Such persons must contact the EEO Counselor "within 45 days of the date of the matter alleged to be discriminatory . . . ." 29 C.F.R. § 1614.105(a).

From what the Court gleans, Plaintiff's discriminatory treatment claim appears to set forth that Defendant acted with a discriminatory animus toward Plaintiff due to his age when "in or around 2010," Defendant implemented a three-part writing examination, which people over the age of 40 "struggled to pass." Dkt. 1, ¶¶ 24, 25. It appears that Plaintiff avers that his denial of the promotion after Plaintiff failed to successfully complete another part of the promotion process was how Defendant treated Plaintiff disparately because of Plaintiff's age. Dkt. 1, ¶ 11.

16

Plaintiff has attached to his Complaint the decision of the EEOC's Office of Federal Operations. Dkt. 1-4. Based on that decision, Plaintiff contacted an EEO Counselor on October 29, 2014. Dkt. 1-4, 2. Plaintiff was notified on November 25, 2013 that he did not perform satisfactorily on the exam, and as such, that he did not qualify to be considered for promotion. Dkt. 1-4, 5. Plaintiff, perhaps realizing his error, contends in his opposition that the alleged discriminatory action took place in "early September 2014." This fact is nowhere in Plaintiff's Complaint and Plaintiff does not so much as to even say what that alleged discriminatory action was that took place during this time. Nevertheless, Plaintiff did not contact an EEO Counselor until October 29, 2014, nearly one year after any possible alleged discriminatory action, and certainly much after the 45-day limit set forth by 29 C.F.R. § 1614.105(a).

Thus, because it cannot even be said that the claim Plaintiff did bring to the EEO was timely, it cannot follow that Plaintiff properly exhausted his remedies before bringing his claim to this Court. Thus, the Court finds Plaintiff is precluded from bringing this claim to this Court as any amendment to Count One would be futile.

*2. Count Two*

Similarly, the Court finds that Defendant is precluded from bringing to this Court Count Two of his Complaint, alleging disparate impact, because Plaintiff failed to timely exhaust his remedies. 29 C.F.R. § 1614.105(a).

Plaintiff notes that "in or around 2010," Defendant implemented a three-part examination for a promotion, which it appears Plaintiff did not receive and, as Plaintiff maintains, "[t]he pass/fail rate of the over/under 40 age group will fully detail the negative impact of the three-pronged test to the over 40 age group." Dkt. 1, ¶¶ 11, 24, 27, 32.

17

For the same reasons Plaintiff cannot be said to have timely exhausted of his remedies with respect to Count One (*supra*, p. 16-17), the Court finds that Plaintiff did not timely exhaust his remedies with regard to Count Two. Accordingly, the Court finds that Plaintiff is also precluded from bringing his claim of disparate impact before this Court.

### 3. Counts Three and Four

This Court also finds that Plaintiff's claims of retaliation are also precluded because Plaintiff failed to adhere to pre-complaint administrative procedure.

Again, this Court applies the Fourth Circuit's finding in *Chacko* (*supra*, p. 15) to address why Counts Three and Four of Plaintiff's Complaint are also precluded. In March of 2015, Plaintiff filed an EEO complaint, which alleged in relevant part that Plaintiff was "[retaliated against] for prior protected activity (*grievances*) when beginning in January 2010, the [NCUA] implemented a new promotion proves that had a disparate impact on [Plaintiff's] ability to be promoted to the CU-12 level." Dkt. 1-4, 2. (emphasis added). In the instant matter, Plaintiff brings two claims, which appear to essentially allege that Defendant, amongst others, was not selected or considered for promoted positions "in retaliation [for] . . . *voting [for NCUA's] union*, NTEU . . . ." Dkt. 1, ¶ ¶ 26, 34-40.[4] (emphasis added).

While Defendant's EEO claim alleged, and the EEO considered, the NCUA's retaliation against Plaintiff *for filing grievances*, Plaintiff now brings a completely new claim before this Court which asserts that Defendant, acting in his official capacity as Chairman of the NCUA, retaliated against Plaintiff essentially because Plaintiff was over 40-years-old and decided to *vote*

---

[4] Plaintiff incorporated paragraph 26 into Counts 3 and 4 by reference (Dkt. 1, ¶¶ 37, 33), which suggests that that claim although not listed in the section for Counts 3 and 4 is connected to those allegations. Also, Plaintiff specifically used the word retaliation in paragraph 26, which further suggests that that fact may also be used to support his claims of retaliation.

*for the NCUA's formation of a union*. The Court finds that these two claims are unrelated, and as such, Plaintiff has failed to exhaust his administrative remedies with respect to Counts Three and Four of the Complaint he brings before this Court.

Plaintiff is precluded from bringing his claims to this Court, and amendment would be futile.

## IV. CONCLUSION

Accordingly, for the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction is DENIED;

IT IS FURTHER ORDERED that Defendant's Motion to Dismiss for Failure to State a Claim is GRANTED;

IT IS FURTHER ORDERED that Plaintiff's Complaint is DISMISSED with prejudice.

It is SO ORDERED.

Alexandria, Virginia
January 17, 2019

/s/
Rossie D. Alston, Jr.
United States District Judge